NO. 4-02-0935

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of

STEVEN MARK SOBOL,

          Petitioner-Appellee,

          and

JILL R. SOBOL,

          
Respondent-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Macon County

  No. 98D126

      

  Honorable

  Albert G. Webber,

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

In February 2002, petitioner, Steven Mark Sobol, filed a petition for modification, requesting that he not be required to move with the minor children, Brett Isacc Sobol (born November 1989) and Valerie Gale Sobol (born May 1992), to Eagle County, Colorado, where respondent, Jill R. Sobol, resided.  After a three-day hearing, the trial court granted petitioner's petition.  Respondent appeals, contending (1) the trial court imposed the wrong standard for modification, (2) the trial court erred in admitting prejudgment evidence, and (3) petitioner failed to meet his burden of proof.  We affirm.

I. BACKGROUND

The parties were married in July 1987.  In March 1998, petitioner filed a petition for dissolution of marriage.  On November 8, 2000, the trial court entered a judgment of dissolution, granting petitioner custody of the minor children with respondent having 
reasonable visitation rights subject to the terms of the November 1, 2000, marital settlement agreement
 (Agreement).  The Agreement provided the following:

"Because the parties believe that the children will be best served by having frequent, regular contact with both parents, [petitioner] shall relocate himself and the children to Eagle County, Colorado, by September 2002, hereinafter referred to as the 'relocation date.'"

The Agreement then set forth different visitation schedules for respondent prior to the relocation (Illinois visitation schedule) and after the relocation.  Additionally, after the relocation date, petitioner was to remain the legal custodian of the minor children, but the parties were to cooperate in making all important decisions regarding the children's "upbringing, health care, education, religious training, and extracurricular activities."

In June 2001, petitioner married his present wife, Jill E. Sobol.  Petitioner, his present wife, the minor children, and petitioner's five-year-old stepdaughter, Carlie, live in a home in Forsyth, Illinois.  Petitioner and the minor children have resided in the home since January 2000.  Petitioner is a board- certified ear, nose, and throat specialist with subspecialty training in head- and neck-tumor surgery and skull-base surgery and maintains a medical practice in Decatur, Illinois.

Respondent lives in a home in Edwards, Colorado.  She moved to Colorado in August 1999 with the minor children, who lived with her until Christmas 1999.  Respondent works part-time as a merchandiser and, at the time of the hearing, was negotiating a partnership interest in a store.

On February 7, 2002, petitioner filed a petition for modification, requesting that he not be required to move to Colorado.  In April 2002, respondent filed a petition to dismiss petitioner's petition, asserting petitioner failed to allege serious endangerment under section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610(a) (West 2000)).  That same month, the trial court denied respondent's petition to dismiss.  In May 2002, respondent filed a motion to reconsider.  In June 2002, respondent filed a petition to compel compliance with the dissolution judgment.

Beginning in July 2002, the trial court held a hearing on the motion and two petitions.  Petitioner testified on his own behalf and presented the testimony of respondent as an adverse witness; Carol Jones, petitioner's nurse; Rita Colee, petitioner's neighbor; Mallory Nelson, petitioner's neighbor; Dr. Lisa Orf, the minor children's psychologist; petitioner's present wife; Julie Mikels, the minor children's baby-sitter and family friend; and Nalini Taylor, mother of one of Brett's friends.  Respondent testified on her own behalf and called petitioner as an adverse witness.

In total, the trial court heard from eight witnesses over three days.  The parties are well aware of the evidence presented at the hearing, and it need not be set forth in detail. 

In October 2002, the trial court entered a lengthy docket entry, finding the standards of section 607(c) of the Act (750 ILCS 5/607(c) (West 2000)) applied to the case, determining that remaining in Illinois was in the children's best interests, granting petitioner's petition for modification, and denying respondent's motion to reconsider and petition to compel compliance with the dissolution judgment.  This appeal followed. 

II. ANALYSIS

A. Legal Standard

Respondent first asserts the trial court applied the wrong legal standard in this case.  The appropriate legal standard in evaluating a modification of a marital settlement's relocation provision is a question of law, and we review 
de
 
novo
 such questions.  See 
Illinois Licensed Beverage Ass'n v. Advanta Leasing Services
, 333 Ill. App. 3d 927, 932, 776 N.E.2d 255, 260 (2002).

The Agreement contained a modification clause that provided a party could petition the court to modify the custodial and visitation provisions of the Agreement where "a substantial and material change in circumstances of either party or either child, or both" occurred.  However, neither party asserts this provision applies, and the trial court found it was not bound by the provision.  Accordingly, the trial court's notation that the Agreement's modification provision was "the key 
to the present controversy" was irrelevant to its ultimate determination of the case.  

We agree with the trial court that the Agreement's modification provision is not controlling.  Section 502(f) of the Act (750 ILCS 5/502(f) (West 2000)) allows a marital settlement agreement incorporated in the dissolution judgment to expressly preclude or limit modification of its terms "[e]xcept for terms concerning the support, custody[,] or visitation of children."  Accordingly, the trial court had the right to modify the Agreement pursuant to the provisions of the Act.  See 
In re Marriage of Loffredi
, 232 Ill. App. 3d 709, 714-15, 597 N.E.2d 907, 911 (1992) (addressing modification of settlement agreement's college-expenses provision). 

The modification sought is not expressly governed by a provision of the Act (750 ILCS 5/101 through 802 (West 2000)).  The parties each assert a different statute applies, and the trial court found a completely different statute was applicable.  Thus, we will review the relevant provisions of the Act.  

On appeal, respondent asserts section 608(a) of the Act (750 ILCS 5/608(a) (West 2000)) is applicable to this case.  Section 608(a) provides as follows:

"Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, the custodian may determine the child's upbringing, including but not limited to, his education, health care[,] and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would 
clearly
 
be
 
contrary
 
to
 
the
 
best
 
interests
 
of
 
the
 
child
."  (Emphasis added.)  750 ILCS 5/608(a) (West 2000).

In the trial court, respondent asserted that petitioner's petition was a modification of custody under section 610 of the Act (750 ILCS 5/610 (West 2000)), and thus it should be dismissed because petitioner brought it within two years of a custody judgment (see 750 ILCS 5/610(a) (West 2000)).  Under section 610(a) of the Act (750 ILCS 5/610(a) (West 2000)), absent a stipulation by the parties, such a motion can only be brought where the court permits it based on "affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral[,] or emotional health."  750 ILCS 5/610(a) (West 2000).  Petitioner did not file any affidavits. 

Petitioner asserts that this case is similar to a removal case under section 609 of the Act (750 ILCS 5/609 (West 2000)).  Pursuant to section 609, a court may grant leave to the minor children's custodial parent to remove such children from Illinois whenever such removal is in 
the
 
children's
 
best
 
interests
.  750 ILCS 5/609 (West 2000).

The trial court found the standards of section 607(c) of the Act (750 ILCS 5/607(c) (West 2000)) applied.  Respondent asserts that if section 607(c) is applicable, then the trial court restricted her visitation rights.  Section 607(c) allows a trial court to modify a parent's visitation rights whenever modification would serve a 
child's
 
best
 
interests
, but prohibits a trial court from restricting a parent's visitation rights "unless it finds that the visitation would 
endanger
 
seriously
 
the
 
child's
 
physical
, 
mental
, 
moral[,]
 
or
 
emotional
 
health
."  (Emphasis added.)  750 ILCS 5/607(c) (West 2000).  

In this case, petitioner filed a petition, requesting the court to modify the marital settlement agreement by not requiring him to remove the minor children from Illinois to Colorado.  Ordinarily, a custodial parent will file a petition to remove a minor child from Illinois.  Under section 609 of the Act (750 ILCS 5/609 (West 2000)), the trial court may approve such a removal when it is in the child's best interests.  Section 609 governs removal even when an agreement purports to limit the right of removal.  See 
In re Marriage of Yndestad
, 232 Ill. App. 3d 1, 7, 597 N.E.2d 215, 219 (1992).  While section 609 does not expressly govern the current situation, the petition addresses a potential out-of-state move, and thus we find section 609 of the Act contains the applicable standards.  See 
Falk v. Falk
, 77 Ill. App. 3d 13, 15-16, 395 N.E.2d 750, 752 (1979) (applying the section 609 standard, even though not expressly applicable, to a removal of a minor child from the agreed area to another city in Illinois).

Section 609 of the Act applies, even though upon relocation respondent was (1) to participate in all important decisions regarding the children's upbringing as allowed under section 608(a) of the Act (750 ILCS 5/608(a) (West 2000)) and (2) to have a substantial increase in visitation with the children.  Illinois courts have recognized that removal affects a noncustodial parent's visitation rights and contractual rights to participate in the minor children's upbringing.  See 
In re Marriage of Eckert
, 119 Ill. 2d 316, 327-28, 518 N.E.2d 1041, 1045-46 (1988) (visitation rights); 
Yndestad
, 232 Ill. App. 3d at 7, 597 N.E.2d at 219 (custodial rights).  However, that impact does not invoke the modification-of-custody standards of section 610 of the Act (750 ILCS 5/610 (West 2000)) (
Yndestad
, 232 Ill. App. 3d at 6-7, 597 N.E.2d at 219) or the standard for restricting visitation pursuant to section 607(c) of the Act (750 ILCS 5/607(c) (West 2000)) (see 
Eckert
, 119 Ill. 2d at 327-28, 518 N.E.2d at 1045-46 (examining only the impact on visitation)).  While those standards do not apply, the trial court is to consider the modification's impact on the other parent's visitation and custodial rights in analyzing the child's best interests.  See 
Eckert
, 119 Ill. 2d at 327-28, 518 N.E.2d at 1045-46 (noncustodial parent's visitation rights); 
Yndestad
, 232 Ill. App. 3d at 7, 597 N.E.2d at 219 (impact of proposed removal on joint custody rights of nonresidential parent).   

Moreover, the clearly-contrary-to-the-best-interest standard of section 608(a) of the Act (750 ILCS 5/608(a) (West 2000)) does not apply.  That standard applies where the 
noncustodial
 
parent
 files a motion, seeking to limit the custodial parent's statutory authority to make decisions regarding the minor child.  See 750 ILCS 5/608(a) (West 2000).  In this case, petitioner, the minor children's 
custodial
 
parent
, filed the motion.  

Although the trial court found this case was a modification of custody under section 607(c) of the Act, the trial court noted the question presented was "whether the best interests of the parties['] children would be served by remaining in Illinois or moving to Colorado."  That question is the same one the trial court would have addressed under section 609 of the Act.  See 
Eckert
, 119 Ill. 2d at 325, 518 N.E.2d at 1044 (in removal cases, the paramount question is whether the move is in the child's best interests). 

 Accordingly, we find that, while the trial court applied the wrong statute, it did not apply the wrong legal standard.

B. Evidence

Respondent next argues the trial court erred in admitting evidence of events prior to the entry of the dissolution judgment.  The admissibility of evidence lies within the trial court's sound discretion, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion.  
In re Marriage of Rudd
, 293 Ill. App. 3d 367, 371-72, 688 N.E.2d 342, 345 (1997).

The specific prejudgment evidence that respondent alleges was admitted in error is Dr. Elizabeth Scott's custody evaluation report that was issued before the dissolution judgment.  While respondent's counsel made a continuing objection to prejudgment evidence, the record clearly indicates respondent's counsel stipulated to the report's admission into evidence.  A party forfeits his right to complain of an error to which he consented.  
McMath v. Katholi
, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000).  

As to prejudgment evidence in general, section 609 of the Act does not prevent a court from considering known, prejudgment evidence like the modification-of-custody provision (750 ILCS 5/610(b) (West 2000)).  Moreover, the Supreme Court of Illinois has held a trial court 
should
 
hear
 
any
 
and
 
all
 
relevant evidence
 in making a removal determination.  
In re Marriage of Smith
, 172 Ill. 2d 312, 320, 665 N.E.2d 1209, 1213 (1996); 
Eckert
, 119 Ill. 2d at 326, 518 N.E.2d at 1045.  Additionally, the party asserting 
res
 
judicata
 has the burden of proving the precise issues had already been considered.  
In re Marriage of Wade
, 158 Ill. App. 3d 255, 263-64, 511 N.E.2d 156, 162 (1987).  Here, respondent failed to do so.  Accordingly, we find the trial court did not abuse its discretion in admitting prejudgment evidence.

C. Sufficiency of the Evidence

Respondent last contends the trial court's judgment was against the manifest weight of the evidence in that petitioner failed to meet his burden of proof.  We disagree.

Under section 609 of the Act (750 ILCS 5/609 (West 2000)), a trial court may only approve a custodial parent's removal of the minor children from Illinois when the approval is in the children's best interests.  The burden of proving such removal is in the children's best interests is on the party seeking removal.  750 ILCS 5/609 (West 2000).  Thus, petitioner bore the burden of proving that remaining in Illinois was in the children's best interests.  A determination of a child's best interests cannot be reduced to a simple bright-line test but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case.  
Eckert
, 119 Ill. 2d at 326, 518 N.E.2d at 1045.  A trial court's determination of what is in a child's best interests should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred.  
Eckert
, 119 Ill. 2d at 328, 518 N.E.2d at 1046.     

In removal cases under section 609 of the Act, the supreme court has identified five factors that should be considered in determining whether removal is in a child's best interests.  Those factors are (1) whether the proposed move will enhance the quality of life for both the custodial parent and the children, (2) whether the proposed move is a ruse designed to frustrate or defeat the noncustodial parent's visitation, (3) the motives of the noncustodial parent in resisting removal, (4) the visitation rights of the noncustodial parent, and (5) whether a reasonable visitation schedule can be worked out.  
In re Marriage of Shaddle
, 317 Ill. App. 3d 428, 433, 740 N.E.2d 525, 530 (2000).  While this case is not an ordinary removal case, the above factors set forth some of the issues that should be considered in determining the children's best interests. 

As to the quality of life of the custodial parent and children, this court has found it is proper for the trial court to consider the financial and emotional well-being of the custodial parent.  See 
In re Marriage of Eaton
, 269 Ill. App. 3d 507, 515, 646 N.E.2d 635, 642 (1995).  Petitioner testified that his medical practice was important to him and he wanted to continue to work.  He had tried to obtain similar employment in Colorado but could not find a position.  Respondent contends that petitioner does not need to work for financial reasons.  However, the record indicates petitioner also needed to work for his emotional well-being.  

Next, the evidence shows that neither party had improper motives for seeking or opposing the modification.  Petitioner had not tried to frustrate respondent's visitation, and the evidence showed he tried to provide visitation to meet respondent's schedule.  Additionally, he purchased a home in Colorado and tried to find a job there.  Respondent opposed the motion because she would have longer and more frequent visitation with the children if they lived in Colorado.   

Regarding respondent's visitation, the parties already have established a reasonable visitation schedule addressing the children living in Illinois.  While respondent desires the increased visitation a move to Colorado would provide, respondent has not exercised all of her visitation under the Illinois visitation schedule.  Petitioner testified on several occasions respondent returned the children early.  Colee testified she had watched the children while respondent went out with friends in Decatur.  

Additionally, the record shows petitioner has allowed respondent to have the children when she has requested.  Petitioner even attempted to provide respondent with additional time with the children while he had a speaking engagement in Colorado but respondent made other plans.  

Pursuant to the Agreement, when petitioner moved to Colorado, petitioner was to retain legal custody of the children but the parties were to cooperate in making all important decisions regarding the children's upbringing, health care, education, religious training, and extracurricular activities.  Accordingly, the impact on respondent's right to participate in the decisions regarding the children's upbringing should also be examined.  See 
Yndestad
, 232 Ill. App. 3d at 7, 597 N.E.2d at 219 (addressing joint custody).

The Agreement also included a "parental cooperation" section that was to apply both before and after relocation.  Petitioner testified that respondent has violated five out of the six provisions included in that section.  Petitioner, petitioner's present wife, Dr. Orf, and Colee all testified as to respondent's involving the children in disputes between the parties.

This court has recognized
 that joint custody can succeed only where the parties have an ability to cooperate effectively and consistently with each other toward the children's best interests.  
In re Marriage of Wycoff
, 266 Ill. App. 3d 408, 412, 639 N.E.2d 897, 901 (1994).  While the agreement did not provide for joint custody in Colorado, the agreed joint decisionmaking would require similar cooperation.  The record shows that, in the past, respondent has not effectively and consistently cooperated with petitioner on matters in the children's best interests.  Thus, the feasibility of the agreement as to joint decisionmaking regarding the children's upbringing is doubtful.

Last, the children are doing well in Decatur.  Petitioner, petitioner's present wife, Nelson, Colee, Mikels, and Taylor testified that the minor children were involved in extracurricular activities and had friends in the neighborhood.  Petitioner further testified the children have integrated into the community.  Nelson stated the children seemed quite happy.

Accordingly, the trial court's conclusion that remaining in Illinois was in the children's best interests is supported by the record and thus not contrary to the manifest weight of the evidence.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., concurs.

STEIGMANN, J., specially concurs.

JUSTICE STEIGMANN, specially concurring:

Although I agree with the majority opinion, I write specially to provide additional clarification regarding respondent's argument that at the July 2002 hearing on the petition for modification, the trial court erred by admitting evidence of events that occurred prior to the November 2000 dissolution judgment.  Specifically, respondent contends that the court improperly considered Dr. Scott's custody evaluation report because that report was before the court prior to its November 2000 order granting petitioner custody of the children.  This contention is wrong. 

In November 2000, when the trial court granted petitioner custody of the children, the court acted pursuant to the parties' marital settlement agreement.  Thus, the child-custody issue was never litigated, and the court's role was essentially limited to accepting the parties' agreement with minimal, if any, scrutiny thereof.

In 
In re Marriage of Weaver
, 228 Ill. App. 3d 609, 616, 592 N.E.2d 643, 648 (1992), this court addressed a claim on an appeal from a custody modification proceeding that collateral estoppel applied, and we wrote the following: 

"Collateral estoppel prevents a party from raising an issue in a later proceeding where that issue was actually or necessarily decided ***.  ***

Generally, a court's order regarding child custody is 
res
 
judicata
 as to facts which existed at the time the order was entered.  ***  Courts should be cautious in determining when to apply 
res
 
judicata
 in child custody cases.  This doctrine should not be strictly applied to bar evidence when the most important consideration is the welfare of a child."

In  
In re Marriage of Kleiboeker
, 262 Ill. App. 3d 644, 634 N.E.2d 1329 (1994), the appellate court addressed a situation very similar to the present case, in which the parties stipulated to the petitioner's having custody at the time the dissolution judgment was entered in 1987.  In 1992, when the respondent sought to modify custody, she presented evidence of petitioner's inappropriate and violent behavior that occurred in 1986.  The trial court granted respondent's petition to modify, and petitioner appealed, arguing, in part, that the court should not have considered the evidence of his 1986 conduct.  The appellate court affirmed, writing as follows:

"The court originally based the custody award to the father on the stipulation of the parties, without taking evidence as to the circumstances of the parents or their ability to take care of the children.  Given these circumstances, section 610 [of the Act] allows the court to consider facts existing at the time of the earlier decree 
but
 
not
 
then
 
known
 
to
 
the
 
court
.  [Citations.]  We find no error in the trial court's consideration of facts 
which
 
were
 
unknown
 
to
 
the
 
court
 at the time of entry of the previous custody order in making its determination under section 610."  (Emphases added.)   
Kleiboeker
, 262 Ill. App. 3d at 649, 634 N.E.2d at 1332.

As in 
Kleiboeker
, in this case, the Scott report was essentially "unknown" to the trial court when it entered its November 2000 custody order, pursuant to the marital settlement agreement.  That is, although the report existed, it was not something the court considered when it approved the parties' marital settlement agreement.  Once the child custody matter was actually brought before the court, the Scott report (which was more than 40 pages long and contained information on the children's best interest) clearly became probative, and the court properly considered it.  Indeed, under these circumstances and given the important task before the court, not only 
could
 the court consider the report, it would have committed error if it had not done so.