# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Agers*, 2013 IL App (5th) 120375

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF HOLLY R. AGERS, n/k/a Holly Shreves, Petitioner-Appellant, and LEE MICHAEL AGERS, Respondent-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-12-0375 |
| Rule 23 Order filed<br>Motion to publish<br>granted<br>Opinion filed | May 30, 2013<br><br>July 8, 2013<br>July 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In contentious proceedings involving visitation, the trial court did not abuse its discretion by refusing to consider the child's uncorroborated hearsay statements about the abuse she allegedly suffered at the hands of respondent, especially when those statements could not be used to support a finding of abuse, a videotape of respondent's visitation with the child at the courthouse was properly considered for the limited purpose of showing that the child did not fear respondent, and the denial of petitioner's request for an *in camera* interview with the child was upheld along with the order requiring petitioner to pay $1,500 of respondent's attorney fees based on her unilateral termination of visitation. |
| Decision Under Review | Appeal from the Circuit Court of Pulaski County, No. 09-D-26; the Hon. William J. Thurston, Judge, presiding. |

| Judgment | Affirmed. |

| Counsel on Appeal | Leslie J. Peters, of Metropolis, for appellant. |
| | Susan C. Burger, of Jonesboro, for appellee. |

| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.<br>Justices Welch and Cates concurred in the judgment and opinion. |

**OPINION**

¶ 1      Petitioner, Holly R. Agers, n/k/a Holly R. Shreves, appeals from an order of the circuit court of Pulaski County denying her amended petition for termination of visitation and a motion to stay and granting respondent Lee Michael Agers' petition for rule to show cause and motion for modification of visitation. As part of this litigation, the trial court also ordered petitioner to pay $1,500 in attorney fees to respondent's attorney. On appeal, petitioner contends the trial court abused its discretion (1) in disregarding out-of-court statements made by the parties' minor child to her counselor, her mother, her grandmother, and her stepfather concerning alleged sexual abuse perpetrated upon her by respondent, (2) by allowing into evidence a videotape of respondent and the minor during visitation at the courthouse, (3) by denying petitioner's motion for an *in camera* interview with the minor, and (4) in finding petitioner in contempt and awarding respondent $1,500 in attorney fees. We affirm.

¶ 2                                  BACKGROUND

¶ 3      The parties married on October 4, 2004. One child, a daughter, S.A., was born on June 16, 2006. On November 2, 2009, petitioner filed for dissolution. An agreed judgment of dissolution was entered on May 25, 2010. Petitioner received sole custody of S.A., and respondent received visitation, including overnight visits with S.A. in Clarksville, Tennessee, where respondent currently resides. The overnight visits began on April 23, 2010. The judgment order provided that respondent shall have visitation "[e]very other Friday at 2:00 p.m. until Saturday at 5:00 p.m. *** until May 21, 2010[,] at which time visitation shall be increased to every other Friday at 2:00 p.m. until Sunday at 5:00 p.m." Respondent was also awarded holiday visitation and one week each summer. A visitation exchange location was also arranged.

¶ 4      On September 19, 2011, respondent filed a petition for rule to show cause after petitioner

unilaterally stopped visitation between respondent and S.A. According to respondent, petitioner failed to give him an explanation as to why she was refusing visitation despite respondent's repeated attempts to text and call petitioner in order to determine why visitation was not being allowed. On October 11, 2011, respondent filed a motion for modification of visitation, seeking not only additional time with his daughter, but also telephone and Skype visits via the Internet.

¶ 5 On November 1, 2011, petitioner filed a response to the motion for modification of visitation, a motion for an *in camera* interview of S.A., and a petition for termination of visitation in which petitioner alleged that respondent sexually molested S.A. The petition specifically alleged as follows:

"1. In June 2011 DCFS [Department of Children and Family Services] investigated a hotline call regarding the sexual molestation of the minor child [S.A.] by [respondent] and found all allegations creditable and reported the matter to the Pulaski County State's Attorney's Office on June 29, 2011.

2. Subsequently, DCFS issued and [*sic*] unfounded report due to lack of jurisdiction as the molestation took place in Tennessee.

3. [S.A.] has unequivocally identified [respondent] as the perpetrator in the sexual abuse for both DCFS and her therapist, Valerie, Kasten, LCPC, NCC.

4. The case has been hot lined to Tennessee for investigation.

5. [S.A.] is afraid of [respondent] as he threatened to kill her and her mommy if she told on him.

6. [S.A.] has made great progress since visitation was discontinued."

In response, respondent filed an objection to the motion for an *in camera* interview and a motion to dismiss the petition for termination of visitation.

¶ 6 In his objection to the motion for an *in camera* interview, respondent asked that the court allow S.A. to testify subject to cross-examination and refuse to interview her *in camera* because "[y]oung children can be made to believe anything, especially when allegations are repeatedly made to them," and alleged that S.A. had been "coached, interviewed and even counseled, to believe in events that never occurred." On January 10, 2012, petitioner filed an amended petition for termination of visitation, which did not add any new allegations. On January 25, 2012, respondent filed a motion to strike the opinion of Valerie Kasten and bar her testimony on the basis that "it is inherently unreliable and unscientific." On that same date, the trial court denied petitioner's motion for an *in camera* interview and denied respondent's motion to strike the expert opinion and bar her testimony. The trial court also ordered temporary supervised visitation to begin on that date and each Saturday thereafter at the Pulaski County dispatch office.

¶ 7 On March 16, 2012, the trial court conducted an evidentiary hearing, which was ultimately completed on May 11, 2012. Witnesses included petitioner, respondent, petitioner's new husband whom she married in December 2010, petitioner's mother, respondent's mother, respondent's brother, and Valerie Kasten, S.A.'s therapist who was hired by petitioner. The evidence failed to show that respondent had ever been indicted on

any charges of sexual abuse either in Illinois or in Tennessee. Respondent testified he called the DCFS hotline one month prior to petitioner's hotline call because respondent suspected that S.A. suffered some type of abuse in Illinois. A VHS tape was admitted into evidence. The tape showed respondent and S.A. interacting during two recent visits at the Pulaski County courthouse.

¶ 8    After hearing all the evidence and arguments of the parties, the trial court entered an order in which it denied petitioner's petition for termination of visitation, finding that petitioner failed to meet her burden. The trial court specifically stated:

> "The bulk of [petitioner's] evidence are alleged statements previously made by the minor child. Those statements are clearly hearsay, [and] double hearsay statements. Pursuant to 750 ILCS 5/606(e) those statements are admissible. However, because they are uncorroborated [and] not subject to cross examination, they are not sufficient by themselves to support a finding of abuse.
>
> The [c]ourt also notes the VHS Tape submitted by respondent father, the [c]ourt admitted the tape into evidence subject to objection by [petitioner's] counsel. The [c]ourt expressly sustains objection made by [petitioner] with respect to statements made by the child offered for the truth of the matter asserted. The [c]ourt finds the tape relevant for the purpose [respondent] offered it which was to show that the minor child did not fear the respondent father [and] for the court to observe the verbal, nonverbal and the physical interaction between the [respondent] [and] [S.A.].
>
> The [c]ourt also considered the testimony of all remaining witnesses, including Valerie Kasten."

The trial court found petitioner fell "far short of meeting her burden" and denied the petition to terminate visitation.

¶ 9    The trial court granted respondent's petition to modify, finding it to be in the best interest of S.A. to have increased visitation with her father during the summer and holidays and to have telephone and computer access with each parent during visitation periods spent with either respondent or petitioner. The trial court gave the parties 21 days to come up with an agreed-upon schedule. With regard to the petition for rule to show cause, the trial court found petitioner's failure to abide by its order was willful, her actions were in violation of the dissolution order, and petitioner was, therefore, found to be in contempt. The trial court stated petitioner could purge herself of the contempt order by abiding by the visitation schedule set forth in the parties' dissolution order and any modification to the order as a result of the instant litigation. Respondent was also awarded four weeks of make-up visitation. The trial court later ordered petitioner to pay $1,500 of respondent's attorney fees.

¶ 10    Petitioner filed a timely notice of appeal. Thereafter, respondent's attorney filed a letter notifying us that respondent "will not be participating in this appeal," but will rely on the record. While we certainly do not advise a party to refrain from filing a brief and participating in the appellate process, we find we may reach the merits of this case because the record is straightforward and the claimed errors are such that we can easily decide them without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

-4-

¶ 11          ANALYSIS

¶ 12       I. UNCORROBORATED STATEMENTS

¶ 13    Petitioner first contends that the trial court abused its discretion in disregarding out-of-court statements made by S.A. to her counselor, her mother, her grandmother, and her stepfather regarding alleged sexual abuse perpetrated upon her by respondent during visitation in Clarksville, Tennessee. However, our review of the record shows that the trial court did not disregard the statements, but rather considered them and found them to be uncorroborated.

¶ 14    A determination regarding the admissibility of evidence is within the sound discretion of the trial court, and a reviewing court will not reverse that decision absent a clear abuse of discretion. *In re Marriage of Rudd*, 293 Ill. App. 3d 367, 371-72, 688 N.E.2d 342, 345 (1997). Section 606(e) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides:

> "Previous statements made by the child relating to any allegations that the child is an abused or neglected child *** shall be admissible in evidence in a hearing concerning custody of or visitation with the child. No such statement, however, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 750 ILCS 5/606(e) (West 2008).

The first sentence of section 606(e) creates a statutory exception to the general rule against hearsay for a minor's out-of-court statements of allegations of abuse or neglect in a hearing concerning custody of or visitation with the child. Therefore, pursuant to section 606(e) of the Act, the hearsay statements were admissible.

¶ 15    The trial court specifically stated in its order that the statements were admissible under section 606(e) of the Act, but because they were uncorroborated, they were insufficient to support a finding of abuse. We agree with the trial court that S.A.'s uncorroborated hearsay statements alone were insufficient to support a finding of abuse. Whether there is sufficient corroboration of evidence is determined on a case-by-case basis. *In re A.P.*, 179 Ill. 2d 184, 198, 688 N.E.2d 642, 650 (1997). Sufficient corroboration of the alleged abuse or neglect requires more than just witnesses testifying that a minor related claims of abuse or neglect to them. *In re A.P.*, 179 Ill. 2d at 198, 688 N.E.2d at 650. Corroboration of abuse or neglect requires "independent evidence which would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred." *In re A.P.*, 179 Ill. 2d at 199, 688 N.E.2d at 650. Corroborating evidence "makes it more probable that a minor was abused or neglected." *In re A.P.*, 179 Ill. 2d at 199, 688 N.E.2d at 650. In *In re A.P.*, a doctor testified that A.P. had an "abnormal hymen in that its opening was enlarged and it had an irregular border," which the doctor believed had been penetrated by a finger or foreign object. 179 Ill. 2d at 191, 688 N.E.2d at 646. Such corroborating evidence is absent in the instant case.

¶ 16    In this case, S.A. did not testify at the proceedings and was not subject to cross-examination, making it necessary for corroborative evidence to support a finding that she had been sexually abused by respondent. There was no medical evidence presented to corroborate

claims of sexual abuse. While petitioner and her mother both claimed S.A.'s vaginal area was red, respondent testified that S.A.'s vaginal area was red during visits and that the redness could have been caused by the bubble baths which S.A. regularly enjoyed. Petitioner also claims corroboration of abuse was indicated in S.A.'s art therapy, play therapy, and the alleged turnaround in S.A.'s behavior once visitation was terminated. We disagree.

¶ 17    First, we point out that Valerie Kasten was not an unbiased witness, as she was hired by petitioner. Second, Kasten's methods were questionable. Third, respondent himself made claims of abuse against petitioner one month prior to petitioner's claims against respondent. Respondent's mother testified that S.A.'s behavior was not abnormal for a child of S.A.'s age and that in her opinion, respondent was not hard enough on his daughter when she exhibited bad behavior. After a careful review of the record, we find it cannot be said that S.A.'s behavior makes it more probable that she was sexually abused. We also agree with the trial court that S.A.'s uncorroborated statements cannot be used to support a finding of abuse and that petitioner failed to present sufficient evidence to show that respondent's visitation would seriously endanger S.A.

¶ 18                                    II. VIDEOTAPE

¶ 19    Petitioner next contends that the trial court abused its discretion in permitting a videotape of respondent and S.A. during visitation at the courthouse to be admitted into evidence. Petitioner argues the videotape was not properly authenticated and its admission constitutes reversible error. We disagree.

¶ 20    As previously set forth, a determination regarding the admissibility of evidence is within the sound discretion of the trial court. *In re Marriage of Rudd*, 293 Ill. App. 3d at 371, 688 N.E.2d at 345. Here, the trial court found the tape relevant only for the purpose of showing that S.A. did not fear respondent and to observe the respondent's interaction with his daughter. The trial court specifically disallowed any statements made by S.A. on the tape to be proof of the matter asserted.

¶ 21    Petitioner made serious allegations of sexual abuse and verbal abuse by respondent toward S.A. The trial court correctly ruled that nothing said on the tape could be used as proof of any matter asserted, but found the videotape to be helpful in discerning whether S.A. was fearful of respondent. After careful consideration, we cannot say that the trial court abused its discretion in allowing into evidence the VHS tape for the limited purpose for which it was allowed. Error, if any, was harmless.

¶ 22                             III. *IN CAMERA* INTERVIEW

¶ 23    Petitioner next contends that the trial court abused its discretion in denying her motion for an *in camera* interview with S.A. Again, we disagree.

¶ 24    Section 604(a) of the Act states that a "court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation." 750 ILCS 5/604(a) (West 2008). As our colleagues in the Third District noted in *In re Marriage of Willis*, 234 Ill. App. 3d 156, 159, 599 N.E.2d 179, 182 (1992), "there is no absolute right to present a

child's testimony during a custody proceeding, and, when that testimony is presented, it is left to the trial court's discretion whether to receive it from the witness stand or *in camera*." Courts in Illinois have repeatedly held that whether a child should be interviewed *in camera* lies within the considerable discretion given to trial courts in such matters. *In re Marriage of Johnson*, 245 Ill. App. 3d 545, 554, 614 N.E.2d 1302, 1308 (1993). An abuse of discretion only occurs where no reasonable person would agree with the position taken by the trial court. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871, 876 (1997).

¶ 25        In denying petitioner's motion for an *in camera* interview, the trial court not only noted S.A.'s young age of five, but also specifically stated:

> "[T]he main factor in this was the Petitioner's attorney–the purpose of the hearing, she did indicate, was to have [S.A.] tell me what had happened to her, which is not the same as ascertaining [S.A.'s] preferences with respect to visitation and custody. And I will also note the amount of time that [respondent] has had no contact with [S.A.]. I find that to be inherently prejudicial to the Respondent."

Petitioner's request for an *in camera* interview was based mainly upon petitioner's desire to have S.A. tell the trial court what respondent allegedly did to her, not to ascertain S.A.'s wishes about visitation. Petitioner could have presented S.A.'s testimony during the hearing, but chose not to do so. We find the trial court's decision to be well reasoned. In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 90, 581 N.E.2d 716, 718 (1991). By all accounts, these were messy and explosive proceedings. Both parties claimed inappropriate conduct toward S.A. The trial court was clearly in a better position than us to make this determination of whether an *in camera* interview was warranted. Under the circumstances presented here, we cannot say that no reasonable person would take the position adopted by the trial court with regard to petitioner's request for S.A. to be interviewed *in camera*. Accordingly, we find the trial court's denial of petitioner's motion for an *in camera* interview of S.A. was not an abuse of discretion.

¶ 26                                    IV. ATTORNEY FEES

¶ 27        The final argument raised by petitioner on appeal is that the trial court abused its discretion in finding petitioner in contempt and awarding respondent $1,500 in attorney fees. Petitioner contends that she withheld visitation in order to protect her child from respondent, and, therefore, her failure to comply with the court-ordered visitation schedule was justified, and she should not be required to pay attorney fees. However, after carefully reviewing the record before us we agree with the trial court that petitioner fell far short of meeting her burden of proof. The trial court properly denied her petition to terminate visitation, and the trial court did not err in ordering petitioner to pay a portion of respondent's attorney fees.

¶ 28        Petitioner is aware that if a party fails to comply with a prior order of the court without cause or justification, an award of attorney fees is mandatory. *In re Marriage of Baggett*, 281 Ill. App. 3d 34, 40, 666 N.E.2d 850, 854 (1996). Here, petitioner failed to comply with the trial court's order regarding visitation and unilaterally stopped S.A.'s visitation with

respondent. The trial court found petitioner's failure to abide by its order regarding visitation was willful, and petitioner was held in contempt. The trial court's order makes it clear that it did not believe petitioner was justified in stopping visitation because it did not believe respondent sexually abused S.A. The trial court stated petitioner could purge herself of contempt by abiding by the visitation schedule. The trial court later ordered petitioner to pay $1,500 of respondent's attorney fees associated with this litigation.

¶ 29    A trial court has broad discretion in determining whether to grant attorney fees in divorce proceedings, and its discretion will not be interfered with unless it is clearly abused. *In re Marriage of Baggett*, 281 Ill. App. 3d at 40, 666 N.E.2d at 854. Here, the trial court ordered petitioner to pay $1,500 of respondent's attorney's bill, which was nearly $4,000. We take very seriously allegations of sexual abuse of a minor. However, the record before us simply does not support petitioner's allegations. After carefully considering the record, we cannot say the trial court abused its discretion in ordering petitioner to pay $1,500 of respondent's attorney fees.

¶ 30                                    CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the circuit court of Pulaski County is hereby affirmed.

¶ 32    Affirmed.